IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES R. DOWNES, #281824,           )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        CIVIL ACTION NO. 2:19-CV-469-MHT
                                    )
WEXFORD HEALTH SOURCES, INC., et al.,  )
                                    )
        Defendants.                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint received

from James R. Downes, a state inmate confined at the Easterling Correctional Facility, on

July 2, 2019.  In the instant complaint, Downes alleges that the defendants have failed to

provide him adequate medical treatment for his back and nerve issues.  On July 2, 2019

and August 8, 2019, the plaintiff filed emergency motions for injunctive relief, Docs. 2 &

20, which the court construed as motions for issuance of a preliminary injunction under

Rule 65(a) of the Federal Rules of Civil Procedure.  Doc. 24.  In these motions, Downes

requests that this court order the defendants to refer him to a free world neurosurgeon or

pain specialist for treatment of his medical issues.

The court directed the medical defendants to show cause why the motions for

preliminary injunction should not be granted.  Doc. 24.  In response to this order, the

medical defendants submitted relevant medical records, Doc. 38-2 at 1–247, and an

affidavit from Dr. Philip Wilson, Doc. 39-1 at 1–14, addressing Downes' requests for

preliminary injunctive relief.  Specifically, the defendants argue that Downes is not entitled to issuance of a preliminary injunction as he has received appropriate treatment for his medical needs.

## II.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court."  *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).  This court may grant a preliminary injunction only if Downes demonstrates each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunctive relief may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest.  *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir. 1983).  "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites."  *McDonald's*, 147 F.3d at 1306 (internal quotations omitted); *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion on each of the prerequisites).

### III.  DISCUSSION

In their special report and response to the motion for preliminary injunction, the medical defendants deny they have acted with deliberate indifference to Downes' conditions related to his back and nerves. The medical defendants assert that medical personnel at Easterling have provided treatment to Downes in accordance with their professional judgment.  They further assert that they referred Downes to a free-world neurosurgical specialist for treatment and, based on the specialist's findings,  an additional referral is neither necessary nor warranted at this time.  In addressing Downes' claims regarding the treatment provided for his back and nerve issues, Dr. Philip Wilson, the Medical Director at Easterling, provides the following information:

> The medical records reveal that on February 25, 2018, Downes refused recommended medical examinations and testing that were recommended by Downes' medical providers.
>
> On September 29, 2018, Mr. Downes was found to have a boil on his right testicle. The nurse noted on the medical chart that Mr. Downes was experiencing swelling and moderate draining to his .right testicle.  Swelling was also noted to Mr. Downes' left testicle. Mr. Downes' testicles were noted to be very sensitive to touch. A culture was obtained.
>
> The medical records set forth that Mr. Downes was placed in the infirmary at the Easterling Correctional Facility due to the abscess noted on his testicle. The medical records reveal that Mr. Downes had complained of pain and swelling for five days in his right scrotum.
>
> Mr. Downes was seen by Laura E. Driggers, CRNP, [at Easterling] on October 1, 2018. Ms. Driggers noted that Ms. Downes had a history of swelling and drainage to his scrotum. Ms. Driggers further noted that Mr. Downes had been non-compliant with his prescribed medications.
>
> On October 2, 2018, Mr. Downes was sent to Baptist Medical Center South in Montgomery, Alabama for consults with outside medical

specialists.  The medical notation from October 2, 2018, from Baptist Medical Center South indicates that Mr. Downes was admitted to the hospital due  to diabetes; end stage renal disease, hypertension, and scrotal wall abscess.

The note from Baptist Medical Center South dated October 2, 2018, states in part as follows:

> You were admitted with scrotal abscess and incision and debridement was done and you were treated with antibiotics. Please take your medications as prescribed. He needs to be on a wet to dry dressing [change] twice daily with Di-Bak Dakins. He had high blood pressure this admission, and we added Amlodipine 10 mg and Coreg 6.25 mg. twice daily.  You need to be on that from now onwards.  You had acute kidney injury when you were here, we got tunneled catheter placed and you need to get dialysed as per nephron reccs. Please monitor his renal function closely.  Please follow up with Dr. Habermacher urologist at Multi Specialty Clinic in two weeks after discharge. Please go to the nearby ED if your symptoms worsen. Please give him renal diet, with no fruit juices  and  no  potassium  containing  foods  as  per  nephron recommendations here, until his AKI resolves.

Mr. Downes was discharged from Baptist South on October 29, 2018. Mr. Downes' admission and discharge diagnoses was set forth as follows: Admission Diagnoses:

1.     Scrotal swelling and pain
2.     Type 2 diabetes Mellitus
3.     Low albumin

Discharge Diagnoses:

1.     Nonoliguric acute kidney injury secondary to acute tubular necrosis
2.     Left shoulder pain, improved
3.     Right scrotal abscess, status  post incision and  debridement on 10/03/2018
4.     Hyperkanemia
5.     Vitamin D deficiency
6.     Hyperphosphatemia
7.     Diabetes Mellitus Type 2
8.     Hypertension
9.     Pleural effusion, resolved

The physicians at Baptist South set forth in the discharge report the following with regard to the history of Mr. Downes' illness:

Mr. Downes is a 58 year old Caucasian gentleman, a resident of Easterling Correctional Facility, with past medical history of diabetes, MRSA infection, transferred from Dale Medical Center for scrotal swelling and pain management. According to him, he developed a small blister over his scrotum 4 days ago before the admission. He had gradual swelling of his scrotum with pain where he could not even stand or move due to pain. He also had some fever, diaphoresis, low abdominal pain and dysuria. The patient was treated with Vancomycin in the facility but he did not have any improvement. The patient was transferred to Dale Medical Center on 10/01/2018 with WBC of 12.9 with left shift and CT abdomen and pelvis showed scrotal cellulitis. On scrotal ultrasound, a complex fluid was also noted and he was given Zosyn, Clindamycin at Dale Medical Center and he was transferred to us for urological evaluation.

After he came here, he was started empirically on Vancomycin and Zosyn for MRSA and Gram-negative coverage. Blood cultures, urine cultures, and urology was also consulted. Blood cultures were positive for Bacillus. Urology was consulted and the patient was kept npo and he got incision and drainage done of his right scrotal abscess.

On admission, his Hba 1c was 10.6 and he was taking Metformin 850 b.i.d. at home and he was also on sliding scale, but we started him on sliding scale while he was here. On admission, he also had Albumin of 2.5 which would be secondary to protein calorie malnutrition. Incision and debridement of the right scrotal abscess was done on I0/03/2018. He was started on wet to dry dressing twice per day. Initially, he was on Vancomycin and Zosyn. The Zosyn was discontinued later and he was continuing on Vancomycin for a few days. He also had a Foley in place. On 10/06/2018, he developed AKI secondary to Nephrotoxic drugs.

During this admission, he was also hypersensitive and he was started initially on Thiazide and, on I0/16/2018, kidney function declined and he developed AKI, his Creatinine bumped up to 2.86. and gradually his Creatinine went up to 9. His BUN also increased from 19 to 28.

Vancamycin was stopped and he was held on his diuretics and for his blood pressure he was started on Anlodipine 10 daily and Coreg 6.25

5

twice daily.  Meanwhile, he also developed some left upper extremity swelling and we did ultrasound to rule out any DVT and there was no DVT seen.  Vancamycin was stopped and he was started on Cefepime and Flagyl, and Flagyl was stopped after that. Nephology was consulted for his A.K.I. Nephology was following him initially.

Initially, during this admission, he also had bilateral pleural effusions on CT scan of his chest. This could be most likely due to volume overload from his impaired renal function and he was Dialyzed initially. He also had Hyperkalemia during his admission..

He initially was treated with Kayexalate and he was kept on a renal diet with low potassium.  His potassium was still high and he was treated with Albuterol and glucose, sliding-scale insulin and his serum creatinine and potassium were not trending down, they were all trending up, so nephrology was on board and they thought of getting him on dialysis and he got a temporary catheter and he got hemodialysis on an alternate day basis.  On admission, his Creatinine was 5 and it came down to 4 and on the day of discharge, his Creatinine was at 4.65.

On day of discharge, the patient also got dialysis. As his kidney function was not improving with dialysis, Nephrology thought his AKI could be secondary to acute tubular necrosis and he might need some time for recovery of his kidneys, so patient was trying to get a permcath placed and he got permcath placed. Temporary catheter was removed and the patient got dialysis on  the day of discharge and was discharged  to St. Clair prison and is to get dialysis over there while he was here, and he was also getting wet to dry dressing changes twice per day.

Repeat x-ray during this admission showed no pleural effusions. Eventually, he was discharged on 10/29/2018 with follow up appointments and anti-hypertensitive medication. His metformin was stopped during this admission as he had AKl and he was discharged with a renal diet with low potassium to be taken.

Upon release from [the] hospital Mr. Downes was seen by Wilcotte Rahming, M.D. at the infirmary at the Kilby Correctional Facility located in Mt. Meigs, Alabama.  Dr. Rahming noted that Mr. Downes Mr. Downes was a 58 year old white male who was initially admitted to the hospital on October 2, 2018, for increased  scrotal pain and swelling  for 4 days prior to his admission. Mr. Downes was initially given Zosyn and other antibiotics. At the hospital in Montgomery, Mr. Downes underwent  a debridement for a

large scrotal abscess and was prescribed antibiotics due to MRSA. Due to complications arising from kidney issues, Mr. Downes was transferred to the St. Clair Correctional Facility,

The medical records set forth that Mr. Downes was seen [in the health care unit] on October 30, 2018 by the nursing staff at St. Clair Correctional Facility where Mr. Downes' chief complaint was that of scrotum pain.

On October 31, 2018, an x-ray was taken of Mr. Downes' chest due to a follow up for pleural effusion. The x-ray was read by the radiologist as follows:

Exam:  Radiograph of the chest.

Technique:  Frontal and lateral views of the chest are submitted.

Prior studies: No prior studies are submitted.

Findings: The lungs are clear. No pneumonia or suspicious pulmonary module/mass. No pleural effusion or pneumothorax. The heart borders, mediastinum and pulmonary vascular pattern are normal. No evidence of ASCVD. There are no acute bony abnormalities of the chest. The upper abdomen is unremarkable. Right internal jugular central lying catheter, the tip in the distal SYS.

Impression: No acute infiltrate. No effusion. Central venous catheter.

The medical records reveal that Mr. Downes was seen on a daily basis for the scrotal wound and the abscess was cleaned and dried and dressed on a daily basis by the medical staff and nurses at the St. Clair Correctional Facility.

The medical records reveal that while at St. Clair Correctional Facility, Mr. Downes was provided with a CPAP machine.

On January 17, 2019, Mr. Downes signed a Release of Responsibility form refusing a urology evaluation to evaluate him for possible prostate cancer which Mr. Downes was advised could be fatal if undiagnosed.

On January 31, 2019, Mr. Downes was seen complaining of back pain with a possible pinched nerve. Mr. Downes informed the medical provider that he had been suffering from back pain and right knee pain since 1998.

An x-ray was taken of Mr. Downes' lumbar spine on February 6, 2019. The x-ray was read by the radiologist as follows:

Exam: Radiograph of the lumbar spine

Technique:  AP and lateral views of the lumbar spine are submitted.  3 images. Prior studies: No prior studies are submitted.

Findings: Study demonstrates a normal alignment of the lumbar spine.  No compression fractures. No evidence of spondylolisthesis. Normal vertebral body heights. Disc space narrowing is not identified. Normal SI  joints. Intact  posterior elements.  Normal perivertibral soft tissues.

Impression: Limited by under penetration.  No acute osseous abnormality or severe degenerative disease identified.

On February 6, 2019, the medical records reveal that Mr. Downes was provided with a wheelchair profile for thirty (30) days.

Due to complaints of pain in the right ankle and right foot, x-rays were taken on March 13, 2019, all of which were negative. Follow up x-rays were taken of Mr. Downes' right ankle on April 10, 2019.  Again, the x-rays were read as negative.

Due to Mr. Downes' continued complaints of back pain, an MRI was ordered which was taken on May 17, 2019. The radiologist who read the MRI noted as follows:

MRI of the thoracic spine without contrast.

Clinical history:  59 year old male with surface pain in the chest/anterior skin from the neck to the pelvis, as well as pain into the right hip and leg.  Complaints of numbness in the right foot with difficulty walking in the past two months.

Findings:  Paraspinal soft tissues are  unremarkable.  Kyphosis is preserved. No posterior osteophyte formation. There is a small

central disc protrusion at T10-T11 and at T11-T12, but no significant foraminal or central canal stenosis. Remaining disc levels are unremarkable. No fracture or suspicious osseous signal abnormality.  No cord signal abnormality.

Impression:

Small disc protrusion centrally at T10-T11 and T11-T12 but no appreciable foraminal or central canal stenosis.

A lumbar spine MRI was also performed on May 17, 2019.  The radiologist rad the lumbar spine MRI as follows:

Lumbar spine MRI without contrast.

History: 59 year old male with pin in the anterior skin from the neck to the pelvis and extending into the right hip and leg.  Also complains of numbness in the right foot and difficulty walking over the last two months.

Findings:

No appreciable fracture or suspicious osseous lesion. The conus lies at the level of T12. Paraspinal soft tissues are unremarkable. Lordosis is preserved.

L5-S1: Disc Desiccation with a mild circumferential disc bulge and moderate to severe facet joint DJD but no significant foraminal or central canal stenosis.

L4-5: Moderate to severe facet joint DJD. No disc protrusion.  No significant foraminal or central canal stenosis.

L3-4:   No disc protrusion. Mild facet joint DJD.  No foraminal or central canal stenosis.

L2-3:  No disc protrusion. Facet joints are normal. No foraminal or central canal stenosis.

Ll-2: Normal disc level.

Impression:

Predominantly facet joint DJD particularly at L4-5 and L5-S1.

In July 2019, Mr. Downes underwent physical therapy. The physical therapy notes from July 2019 [are] set forth as follows:

In my professional opinion, this client requires skilled physical therapy in conjunction with a home exercise program to address the problems and achieve the goals outlined below. Overall rehabilitation potential is good. Expected length of this episode of skilled therapy service is required to address the patient's condition is estimated to be six weeks. The patient has been educated regarding their diagnosis, prognosis and related pathology. The patient exhibits good understanding and performance of the therapeutic activity/instructions outlined during skilled rehabilitation session. Patient has multiple back ailments impacting POC. Presentation is evolving due to decrease in function and increase in pain. Presents with deficits of weakness, ROM, pain, flexibility, ADL performance, and work capacity. VC and TC required for proper technique during therex exercises. Moderate complexity evaluation performed. Decrease in pain following manual techniques.

Mr. Downes was in fact given physical therapy.

On August 7, 2019, Mr. Downes was seen by Patrick Ryan, M.D. at Montgomery Neurosurgical Associates. Dr. Ryan's notes from that date state as follows:

Date of visit: 08/07/2019

Attending physician: Patrick Ryan, MD

Chief complaint: Weakness. Patient states that they have had this problem before and they have not been hospitalized. Bilateral leg and foot pain. Bilateral foot numbness. Back pain 7/10. Abdominal pain. Hip pain. Low back and buttock pain. Low back and leg pain.

The source of information:

The history was obtained directly from the patient.

History of present illness:

The patient is a 59 year old white male. He is referred to us for evaluation of the thoracic and lumbar spine. He has had significant pain since February 2019. He complains of pain in his feet bilaterally, the right worse than the left one. This is from the ankle to his toes. He has intense burning, shooting pain in this region, as well as numbness. The heels hurt less than the res[t] of his feet. He also complains of burning sensation and a hypersensitivity in his anterior thorax from his groin up to his chest. He states that it is sensitive to materials and this feels hot to the touch at night. He has some radiating pain in his mid-thoracic region anteriorly as well. He denies recent rashes or skin changes. He has some back pain, and.has to rest frequently. During the course of his work up he received a thoracic and lumbar MRI, after which he was referred here for further recommendation. He is an inmate at Easterling Correctional Facility.

Dr. Ryan's medical notes of August 7, 2019, indicate that Dr. Ryan reviewed the thoracic spine and lumbar spine MRIs recently taken in May 2019. With regard to those studies, Dr. Ryan set forth as follows:

Thoracic spine MRI interpretation: The aforementioned studies were interpreted as unremarkable or within normal limits on an age adjusted basis.

Lumbar spine MRI interpretation: Degenerative disc changes are noted the lumbar spine diffusely.

Diagnosis: Unspecified abdominal pain and radiculopathy, lumbar region.

With regard to the treatment plan recommended by Dr. Ryan, he set forth as follows:

Treatment plan:

The patient may have some neuropathy so I would recommend an EMG/NCV. Also his abdominal pain would need to be evaluated

by a general surgeon or someone similar. I do not see any neurosurgical intervention needed at this point. Continue with current conservative treatment.

Mr. Downes will be continued to be seen and treated for his necessary medical needs by me and the medical staff at the Easterling Correctional Facility.

The outside specialist neurosurgeon stated on 8/7/2019 that neurosurgical intervention was not needed at this point.

Mr. Downes' necessary medical needs have at no time been delayed or denied. Due to Mr. Downes' complaints of back pain, he has had MRIs of both the thoracic and lumbar spine and has been sent out to be seen by an outside neurosurgeon who has given his opinion that at this juncture no neurosurgical intervention is needed. Dr. Ryan recommended that current conservative treatment be continued.

Mr. Downes has been prescribed medicines specifically for his neuropathy.

An appointment is currently being scheduled for Mr. Downes to have the nerve conduction studies performed as recommended by Dr. Ryan.

I have personal knowledge of the medical treatment that has been provided to Mr. Downes during his incarceration with the Alabama Department of Corrections.

With my personal knowledge of Mr. Downes' medical conditions, Mr. Downes' treatment, and my review of Mr. Downes' medical file, it is my opinion that Mr. Downes has at all times been treated within the standard of care of physicians practicing medicine in the state of Alabama.

Doc. 39-1 at 2–13. The medical records compiled contemporaneously with the treatment

provided to Downes support the affidavit submitted by Dr. Wilson.

Turning to the first prerequisite for issuance of preliminary injunctive relief, the

court finds that Downes fails to demonstrate a substantial likelihood of success on the

merits of his claims.  Downes likewise fails to establish a substantial threat that he will

suffer the requisite irreparable injury absent issuance of the requested preliminary

injunctions.  The third factor, balancing potential harm to the parties, weighs more heavily

in favor of the defendants as issuance of the injunction would have an unduly adverse effect

on the ability of prison medical personnel to exercise their professional judgment in

determining the appropriate course of treatment for Downes.  Finally, the public interest

element of the equation is, at best, a neutral factor at this juncture.  Thus, Downes has failed

to meet his burden of demonstrating the existence of each prerequisite necessary to warrant

issuance of preliminary injunctive relief.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for preliminary injunction filed by Downes be DENIED.

2.  This case be referred back to the undersigned for additional proceedings.

On or before **September 4, 2019**, the parties may file objections to the

Recommendation. The parties must specifically identify the factual findings and legal

conclusions in the Recommendation to which an objection is made.  Frivolous, conclusive,

or general objections will not be considered by the court.

Failure to file written objections to the Magistrate Judge's findings and

recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo

determination by the District Court of legal and factual issues covered in the

Recommendation and waives the right of the plaintiff to challenge on appeal the district

court's order based on unobjected-to factual and legal conclusions accepted or adopted by

the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-

1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.

1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of August, 2019.

/s/  Charles S. Coody
UNITED STATES MAGISTRATE JUDGE